UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


| | |
|---|---|
| **ASPEN INSURANCE UK, LTD.** | **CIVIL ACTION** |
| **VERSUS** | **No. 09-2906** |
| **DUNE ENERGY, INC as successor-in-interest to GOLDKING ENERGY CORPORATION** | **SECTION I/1** |

## ORDER AND REASONS

Before the Court is a motion for summary judgment filed by plaintiff, Aspen Insurance UK, Ltd. ("Aspen").[1] Defendant, Dune Energy, Inc. as successor-in-interest to Goldking Energy Corporation (collectively referred to herein as "Dune") opposes the motion. For the following reasons, the motion is **GRANTED**.

### *BACKGROUND*

In August, 2007, Dune operated several oil and gas wells on a tract of land known as the Bateman Lake Oilfield in Louisiana ("the leased property").[2] On August 4, 2007, Dune employees discovered an oil leak caused by a catastrophic failure of a flowline operated by Dune.[3] The leak resulted in approximately 146 barrels of oil being released onto the leased property.[4] Dune spent approximately $1,200,000 cleaning the property.[5]

---

[1] R. Doc. No. 17.
[2] R. Doc. No. 1, para. 6.
[3] R. Doc. No. 25-7, p. 1.
[4] R. Doc. No. 1, para. 8.
[5] R. Doc. No. 1, para. 9.

1

At the time of the leak, the property was covered by a liability insurance policy ("the policy") issued by Aspen.[6]  Dune made a claim under the policy to recover the cost of the clean up.[7]  Aspen denied Dune's claim and filed this lawsuit on March 2, 2009, seeking a declaratory judgment that the policy does not afford insurance coverage for the leak discovered on August 4, 2007.[8]  In its motion for summary judgment, Aspen argues that the policy does not provide coverage because the policy excludes damage to "property rented or occupied by the insured and excludes pollution liabilities if the damage occurs to property leased by, or in the care, custody or control of the insured."[9]

## STANDARD OF LAW

### I. Summary Judgment Standard

Summary judgment is proper when, after reviewing "the pleadings, the discovery and disclosure materials on file, and any affidavits," the court determines there is no genuine issue of material fact.  Fed. R. Civ. P. 56(c).  The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case.  Celotex, 477 U.S. at 323; Fontenot v. Upjohn Co., 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of

---

[6] R. Doc. No. 1, para. 10.  The policy number was 06800N6558.  The policy was issued on December 21, 2006 to Goldking.  R. Doc. No. 17-2, p. 2.  On May 15, 2007, Dune was added as an additional insured under the policy.
[7] R. Doc. No. 1, para. 10.
[8] R. Doc. No. 1, para. 22.
[9] R. Doc. No. 17-1, p. 1.

2

material fact for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The non-moving party must carry this burden as to each essential element on which it bears the burden of proof. Schaefer v. Gulf Coast Regional Blood Center, 10 F.3d 327, 330 (5th Cir. 1994). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. Id. The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." Id. at 255; see also Hunt v. Cromartie, 526 U.S. 541, 552 (1999).

## II. Louisiana Contract Law

The interpretation of a contract is the determination of the common intent of the parties. La. Civ. Code. art. 2045. "In ascertaining the common intent, words and phrases in a [contract] are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning, in which case the words must be ascribed their technical meaning." Id. (citing La. Civ. Code. art. 2047).

In Hill v. Shelter Mutual Insurance Co., the Louisiana Supreme Court set forth the standard for the interpretation of insurance policies:

> An insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Civil Code. If the words of the policy are clear and explicit and lead to no absurd consequences, no further

3

> interpretation may be made in search of the parties' intent and the agreement must be enforced as written. An insurance policy should not be interpreted in an unreasonable or strained manner so as to enlarge or restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. The policy should be construed as a whole and one portion thereof should not be construed separately at the expense of disregarding another. If after applying the other general rules of construction an ambiguity remains, the ambiguous contractual provision is to be construed against the insurer who issued the policy and in favor of the insured.

935 So.2d 691, 693-94 (La. 2006) (internal citations omitted).

## *DISCUSSION*

The policy's seepage and pollution endorsement contains an exclusion precluding liability

> for seepage, pollution or contamination of property which is or was, at any time, owned, leased, rented or occupied by any insured, or which is or was, at any time, in the care custody or control of any insured (including the soil minerals, water or any other substance on, in or under such owned, leased, rented or occupied property or property in such care, custody or control).

R. Doc. No. 17-2, pp. 31-32. Aspen argues that this exclusion precludes coverage under the policy because the damage caused by the oil leak was entirely contained within the leased property.[10]

The interpretation of an unambiguous contract is an issue of law for the court. <u>Amoco Production Company v. Texas Meridian Resources Exploration, Inc.</u>, 180 F.3d 664, 668 (5th Cir. 1999). A contract provision is not ambiguous merely because one party creates a dispute about it. <u>Id.</u> While exclusionary provisions in contracts are strictly construed, "the rule of strict

---

[10] In its opposition, Dune argues that Aspen's reliance on the seepage and pollution endorsement to preclude coverage is inappropriate because it was not pleaded in Aspen's complaint. However, Aspen pleaded both the absolute pollution exclusion set forth in the seepage and pollution endorsement as well as the actual language relied upon by Aspen in its motion. See R. Doc. No. 1, para. 12. This pleading provided Dune with notice that the absolute pollution exclusion might apply. Discovery following the filing of the complaint has fleshed out the facts and issues debated in this summary judgment motion.

4

construction does not authorize a perversion of language or the exercise of inventive powers for the purpose of creating an ambiguity where none exists." Grefer v. Travelers Insurance Company, 919 So.2d 758, 773 (La. App. 5 Cir. 2005) (quoting Ledbetter v. Concord General Corp., 665 So.2d 1166 (La. 1996)).

Dune does not argue that the oil leak caused damage to geographically neighboring properties. Rather, Dune argues that the exclusion does not apply because Dune's lease of mineral rights was not a lease of property in the "traditional sense" and that the "surface rights to the subject property were not owned, leased or otherwise in Dune's possession." Dune argues that because a mineral lease alone "does not convey title or rights to the surface of the land,"[11] damage done to the surface of the land should not be considered damage to Dune's property.[12]

Dune's argument ignores, however, Dune's own answers to interrogatories. Dune stated that "[t]he property which was directly impacted by the occurrence discovered on August 4, 2007, was and is leased by Dune."[13] Further, Dune explained that it "ordered clean-up of the material which leaked from the Flowline at the Bateman Lake site to restore **its property** to the pre-Leak condition for its own use, enjoyment, and good stewardship towards the environment in which it operates" (emphasis added).[14]

Dune's argument that its mineral lease did not extend to the damaged property is of no consequence. In addition to excluding damage to property that Dune owns, rents, or occupies, the unambiguous language of the policy excludes coverage for "the soil, minerals, water **or any**

---

[11] R. Doc. No. 25, p. 7.
[12] Dune cites Devon Energy Production Co. v. American Int'l Specialty Lines Ins. Co., 2009 WL 1256971 (S.D.Tex. May 4, 2009) in support of its position that the owned property exclusion does not bar coverage because Dune only possessed a mineral lease. In that case, however, the exclusion was not nearly as broad as the exclusion at issue in this case. Here, unlike in Devon Energy, the applicable exclusion bars coverage not just for property owned, occupied, or rented by the insured, but also for the soil, minerals, water, or any other substance on, in, or under such property.
[13] R. Doc. No. 17-3, p. 2.
[14] R. Doc. No. 17-3, p. 6.

**other substance on, in or under** such owned, leased, rented or occupied property." The damage claimed by Dune occurred on the physical property that it leased. The Court will not search for a deeper meaning within the contract in order to create ambiguity where none exists. Because there is only one reasonable interpretation of the contract, there is no genuine issue of material fact to preclude summary judgment. See Amoco Production Co., 180 F.3d at 669.

## *CONCLUSION*

For the reasons state above,

**IT IS ORDERED** that Aspen's motion for summary judgment is **GRANTED**.

**IT IS FURTHER ORDERED** that Dune's counter-claim[15] is **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, March 15, 2010.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[15] Dune's counter-claim seeks (1) a declaratory judgment that the Aspen Policy provides coverage; (2) damages for breach of contract due to Aspen's refusal to pay the cost of the clean up; and (3) bad faith damages for the refusal to pay. Because of this Court's finding that the policy does not provide coverage for the leak discovered on August 4, 2007, Dune cannot prevail on its counter-claim.

6